IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VINCENT PIERRE TERRY,               )
                                    )
              Petitioner,           )        No C 04-2491 TEH (PR)
                                    )
      vs.                           )        ORDER DENYING PETITION
                                    )        FOR A WRIT OF HABEAS
K. PROSPER, Warden,                 )        CORPUS
                                    )
              Respondent.           )
_____   )

        Vincent Pierre Terry, a State of California prisoner, seeks a writ of habeas

corpus under 28 U.S.C. § 2254.  For the reasons set forth below, the petition for a writ

of habeas corpus is denied.

                        **STATEMENT OF THE CASE**

        On April 10, 2002, petitioner was convicted by a jury in the Superior Court of

the State of California in and for the County of San Francisco of second-degree auto

burglary.  In a bifurcated proceeding, the trial court found that petitioner had previously

been convicted of a serious felony and sentenced him to six years in state prison.

        On August 28, 2003, the California Court of Appeal affirmed the judgment of

the trial court and, on November 12, 2003, the Supreme Court of California denied

review.

        While petitioner's direct appeal was still pending before the California Court of

Appeal, petitioner filed a petition for writ of habeas corpus in the Supreme Court of California.  On April 30, 2003, the Supreme Court of California summarily denied petitioner's request for state habeas relief.

Petitioner then filed the instant federal petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Per order filed on July 28, 2004, the court found that the petition, when liberally construed, stated cognizable claims under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted.  Respondent has filed an answer to the order to show cause and petitioner has filed a traverse.

**FACTUAL BACKGROUND**

The California Court of Appeal summarized the facts of the case as follows:

> Valerie I., a student at Hastings School of Law, testified that on January 27, 2002, at 10:00 a.m., she parked her red 1995 Honda Civic on Hyde Street between Golden Gate Avenue and McAllister Street. She locked her doors and closed the windows before going to class. When she next saw the car that day, the driver's side window was broken. Nothing was missing from the car; however, the glove compartment was open, and "a lot of papers" had been removed from it.

> Whitney H., another Hastings student, testified that at around noon on January 27, 2002, she was walking down Hyde Street between Golden Gate and McAllister when she heard glass breaking. She saw a man using a blanket to remove glass from the driver's side window of a red Honda parked across the street. The man she saw was African-American; he was wearing a white jacket and blue jeans. In court, she identified appellant as the man she saw breaking into the car. Whitney H. went into the law school to find the security guard and told him what she had observed.

> Romney Rhodes is a public safety and security officer at Hastings. On January 27, 2002, at around noon, Whitney H. approached him and said that she had seen someone breaking into a car. He immediately left Hastings and walked up Hyde Street. When he got within a car length of the Honda, he saw someone in the driver's seat, leaning toward the passenger seat. Rhodes pulled back the blanket that was hanging over the driver's side window and saw the person's hand moving from the glove compartment to the stereo, attempting to pull out the stereo. Rhodes ordered appellant out of the car, made a citizen's arrest and handcuffed him. In court, Rhodes identified appellant as the man he saw in the car.

> Rhodes flagged down a passing police car. Because the officer in that car was answering another call, he radioed for another unit to take

appellant into custody. After the second unit arrived, Rhodes heard appellant say to one of the police officers that "he did it to buy drugs." San Francisco Police Officer Romina Izaguirre was one of the officers in the second unit. She testified that while she was speaking with Rhodes, she heard appellant say: "You guys are not going to do anything. I'm just going to be cited out anyway. I just did it for the fix." She also heard him admit that he broke into the vehicle.

People v. Terry, No. A099352, slip op. at 2-3 (Cal. Ct. App. Aug. 28, 2003) (Resp't Ex. 8).

## DISCUSSION

A.    Standard of Review

A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must

3

also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied.  Id.

B.     Claims

Petitioner raises two claims for relief under § 2254: (1) prejudicial admission of hearsay evidence; and (2) ineffective assistance of trial counsel.

1.     Admission of Hearsay Evidence

Petitioner claims that the trial court judge violated his right to due process in allowing the jury to hear security officer Rhodes's testimony concerning petitioner's inculpatory statements made at the crime scene without first conducting a California Evidence Code section 402 hearing.[1]

A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional

---

[1]California Evidence Code section 402(b) reads in pertinent part: "[I]n a criminal action, the court shall hear and determine the question of the admissibility of a confession or admission of the defendant out of the presence and hearing of the jury if any party so requests."  Cal. Evid. Code § 402(b) (2005).

4

or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process.  See Pulley v. Harris, 465 U.S. 37, 41 (1984); Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).  The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  See Estelle v. McGuire, 502 U.S. 62, 67 (1991); Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995).  Generally, only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process.  See Jammal, 926 F.2d at 920.

In order to obtain habeas relief on the basis of evidentiary error, petitioner must show that the error was one of constitutional dimension and that it was not harmless under Brecht v. Abrahamson, 507 U.S. 619 (1993).  The court must find that the error had "'a substantial and injurious effect' on the verdict."  Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting Brecht, 507 U.S. at 623).

A review of the state trial court record shows that defense counsel initially requested a section 402 hearing regarding Mr. Rhodes's testimony prior to trial. However,  the "Court rule[d] that a 402 hearing [would] not be held in regard to the testimony of the private security officer."  Resp't Ex. 1 at 40 (Apr. 8, 2002 minutes). While the court did not indicate why the request was denied, Judge Warren's later comments make clear that the court did not believe that the statements were made while petitioner was in police custody:

> When the motion was originally made by [defense counsel], as I recall, the representation of the testimony was that Mr. Terry made this statement to Mr. Rhodes, not to a police officer.  The police officers were not present, as far as the representation of the court's concerned.

> Had the police officer been present in the representation, and had they had Mr. Terry in custody, obviously, we would have had a different situation.  I was not informed of that.  I did not learn that, until Mr. Rhodes testified to that

5

today, that he overheard the defendant say, to the police officer who had him in custody, that he did it.

So we have quite a different situation from that which was represented to the Court before.

I will notice both counsel concurred in the description of the anticipated testimony, and police officers were not mentioned at all.

Now, this statement came as a surprise to me, I must admit.

Resp't Ex. 4 at 68-69.

Judge Warren's comments indicate that there was nothing in the evidence represented to him that raised concerns as to the voluntariness of the statements because he initially believed that the statements were made to a private security officer. However, once Judge Warren understood that petitioner's statements were made in the presence of police officer Izaguirre, he took prompt, corrective action. Judge Warren acknowledged that trial counsel's "objection was tardy," but nonetheless ordered a section 402 hearing out of the presence of the jury. Id. at 69. He explained that "[w]e will have a hearing for the purpose to determine whether or not a proper -- I mean, a statement was indeed voluntary; in which case, there is no error, and it would be admitted. But if it's not, and if there's a constitutional violation, I have to do something further." Id. at 70.

At the section 402 hearing, the only proof presented was the testimony of officer Izaguirre, who responded to the crime scene on January 27, 2002. Officer Izaguirre explained that when she arrived on the scene, security officer Rhodes had already handcuffed petitioner. Id. at 73. Her first step in the investigation was to "interview Mr. Rhodes and find out what was going on." Id. While she was speaking to Mr. Rhodes, petitioner "repeatedly said, um 'I just broke into the car for a fix. You guys are not going to do anything. I'm just going to be cited out.'" Id. Officer Izaguirre further

testified that neither she nor her partner, officer Mitchell, directed any statements or questions at petitioner.  Id. at 74-75.  And, even after officer Izaguirre assumed custody of petitioner, he continued to repeat the statements even though neither she nor her partner asked him any questions about the incident.  Id. at 76.

At the conclusion of the uncontradicted testimony by officer Izaguirre, the court stated:

> The Court has listened to the testimony of the officer.
>
> The Court finds that even if we assume, for purposes of this argument, that Mr. Terry was in the custody of the San Francisco police, as opposed to the custody of the Hastings security service, in either case, it doesn't make a difference, because the officers did not ask any questions, did not seek to elicit any information from the defendant; from the testimony, volunteered statements.
>
> Under those circumstances, a volunteered statement is admissible, is not coerced or taken in violation of the defendant's constitutional rights.
>
> The Court finds that the hearing has established that Mr. Terry voluntarily spoke the word -- well, I don't make that finding, but to the extent the Court finds that it will be admissible to the jury for them to make that finding as to whether or not Mr. Terry spoke the words that have been attributed to him.
>
> There is no [sic] absolutely no issue that needs to be addressed here.  No further admonition to the jury is warranted.

Id. at 77-78.

The California Court of Appeal agreed with the trial court that petitioner's statements at the crime scene were voluntary and admissible:

> After Rhodes testified but before Officer Izaguirre testified before the jury, defense counsel objected to Rhodes's testimony that appellant told one of the police officers that he committed the burglary in order to buy drugs. Counsel argued that appellant's statement was apparently elicited while he was in police custody and that it should be stricken. Alternatively, he sought a mistrial in light of the error in admitting the testimony in the first instance. The court chose to conduct an Evidence Code section 402 hearing to determine whether the statement was admissible before ruling on the motion for a mistrial. At that

hearing, Officer Izaguirre testified that she was speaking to Rhodes and had directed no questions to appellant when appellant said, "I just broke into the car for a fix. You guys are not going to do anything. I'm just going to be cited out." Appellant made those statements "repeatedly" both before and after the police took him into custody. The court determined that the police did not seek to elicit information from appellant and, thus, that the testimony regarding his statements was admissible. Accordingly, the court denied the motions to strike and for a mistrial. We see no abuse of discretion on the part of the trial court. Officer Izaguirre's uncontradicted testimony established that appellant's statements were spontaneously and voluntarily made and thus admissible. (People v. Coleman (1970) 8 Cal. App. 3d 722, 731-732, 87 Cal. Rptr. 554; In re Rinegold (1970) 13 Cal. App. 3d 723, 726-728, 92 Cal. Rptr. 18). Accordingly, their admission did not constitute grounds for a mistrial.

People v. Terry, slip op. at 4.

The California Court of Appeal reasonably concluded that the trial court did not err in admitting Rhodes's testimony about petitioner's inculpatory statements. At the section 402 hearing, the uncontradicted testimony showed that petitioner had made the statements voluntarily and spontaneously. There is simply no showing that the admission of the statements violated a specific federal constitutional provision or deprived petitioner of the fundamentally fair trial guaranteed by due process. Cf. Jammal, 926 F.2d at 919-20.

The California Court of Appeal also addressed petitioner's contention that conducting the section 402 hearing after the admission of the testimony was prejudicial:

In his supplemental brief, appellant asserts that the trial court should have conducted the Evidence Code section 402 hearing before Rhodes testified about the alleged statements to the police. Whatever conceptual merit there may be in that assertion, we fail to see any possible prejudice to appellant in light of the court's proper finding that the testimony was admissible.

People v. Terry, slip op. at 4 n.2.

The California Court of Appeal reasonably concluded that conducting the section 402 hearing after the admission of the statements was not prejudicial given that Rhodes's testimony was admissible. The timing of the hearing, after the admission of

8

Rhodes's testimony, did not matter given that the trial court properly concluded that petitioner's statements were voluntary. It simply cannot be said that the admission of the statements before the court conducted its section 402 hearing was prejudicial. See Brecht, 507 U.S. at 623. The state court's rejection of petitioner's claim was not contrary to, or involved an unreasonable application of, Supreme Court precedent, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Petitioner is not entitled to federal habeas relief on his claim of erroneous admission of evidence.

### 2.   Ineffective Assistance of Trial Counsel

Petitioner claims that he received ineffective assistance of counsel because trial counsel: (1) failed to communicate adequately with petitioner and keep him reasonably informed; (2) failed to convey an initial plea offer to petitioner; and (3) failed to request a timely Evidence Code section 402 hearing and move to suppress petitioner's inculpatory statements made while in the custody of security officer Rhodes and police officer Izaguirre.

In order to prevail on an ineffective assistance of counsel claim, petitioner must satisfy two requirements. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. Id.

a.   Failure to Communicate Adequately with Petitioner and Keep Him Reasonably Informed

9

Petitioner claims that trial counsel was ineffective because trial counsel failed to communicate adequately with him and keep him reasonably informed.  Petitioner notes that trial counsel visited him only once and that the one visit was only a few days before trial commenced on April 10, 2002.

At a pre-trial hearing on April 5, 2002, petitioner specifically argued that "counsel had not adequately pursued or explained his right to a speedy trial."  People v. Terry, slip op. at 4.  The trial court and the California Court of Appeal rejected the claim on the ground that petitioner "failed to establish that his counsel had failed to protect his right to a speedy trial."  Id. at 5.  The state courts' determination was reasonable because the record makes clear that petitioner's right to a speedy trial was not violated -- the applicable 60-day speedy trial period did not expire until after petitioner's trial commenced.  See Resp't Ex. 2 at 5-6 (60-day speedy trial period did not expire until April 29, 2002, 19 days after trial commenced).  Petitioner is not entitled to federal habeas relief on his claim that counsel did not adequately pursue or explain his right to a speedy trial.  See 28 U.S.C. § 2254(d).  Nor is petitioner entitled to federal habeas relief on his general claim that counsel failed to communicate adequately with him and keep him reasonably informed.  Petitioner has not "affirmatively prove[n] prejudice" in connection with this claim.  Strickland, 466 U.S. at 693.

b.    Failure to Convey Initial Plea Offer to Petitioner

Petitioner claims that trial counsel was ineffective in failing to convey an initial plea offer of 16 months to him.  He points to two exchanges between the trial court and his counsel at the April 5, 2002 pre-trial hearing to support this contention:

> [DEFENSE COUNSEL]: . . . Mr. Terry is correct.  The first offer was three years in State Prison.

1          * * * *

2          THE COURT: When was Judge Louie's offer of 16 months?

3

4          [DEFENSE COUNSEL]: That was -- let me see.  I didn't write it down.  It was
           at the pretrial conference on March 18th.

5

6    Resp't Ex. 2 at 7, 9.  Based on these exchanges, petitioner asserts that he was not

7    informed of the 16-month offer by his trial counsel.

8          Failure on the part of a defendant's attorney to convey a plea offer to the

9    defendant can constitute ineffective assistance of counsel.  See United States v.

10   Blaylock, 20 F.3d 1458, 1465-67 (9th Cir. 1994) (finding that under prevailing

11   professional standards, an attorney's failure to communicate a plea offer to his client

12   can constitute unreasonable conduct and satisfy the first part of the Strickland test).

13   However, this was not such a case.

14         At the April 10, 2002 hearing, the trial court considered and rejected petitioner's

15   argument that he had been denied effective assistance of counsel because he had not

16   been fully informed of all plea offers.  Resp't Ex. 3 at 21-23.  The court stated:

17              As far as the settlement stuff goes, the reason I brought [you] into court
18         and spent what was a half hour at least -- I'm not sure if it was on the record or
           not, but I think it's stipulated that [the prosecutor], [defense counsel], you and I
19         spent a substantial amount of time discussing the offers that had been made,
           what the likelihood -- various likelihoods were of various consequences, how
20         long the offer would remain open, when the offer would be withdrawn.

21              I asked you if you had any questions about what the various offers were.
22         Nothing was raised about anything, except that you were going to go to trial.
           That was it, which was fine.  That's your right.  I respect that and gave you the
23         fairest possible trial you could be given.  The evidence was not in your favor;
           however.  The jury didn't buy it.  And as a result of that, it's inappropriate at
24         this stage to say it's Mr. Goldman's fault because he didn't have - he wasn't
           acting as proper counsel.  That's simply not the case.

25

26   Id. at 23.  The California Court of Appeal agreed.  See People v. Terry, slip op. at 5.

27

28                                           11

Factual findings by the state courts are presumed correct.  28 U.S.C. § 2254(e)(1).  In this case, the state courts' factual finding that petitioner was informed of all pretrial offers and refused them because he wanted probation is presumed correct. Petitioner has failed to meet his burden of rebutting this presumption by clear and convincing evidence.  See id.

Petitioner's assertion that there was a 16-month offer of which counsel did not inform him does not compel a different result.  The only evidence in the record that appears to support petitioner's assertion -- Judge Warren's mention of an "offer of 16 months" at the April 5, 2002 hearing -- was a typographical error or a misstatement that no one caught at the time, and petitioner points to no other evidence to support a 16-month offer.  When viewed as a whole, the record makes clear that there was a <u>32-month offer</u> and that petitioner had been informed of this offer but rejected it.  At the April 10, 2002 hearing, the trial court describes the 32-month offer as "that fairly extraordinary deal of 32 months."  Resp't Ex. 3 at 16.  This 32-month offer approximates the "three-years in State Prison" offer that counsel discussed at the April 5, 2002 pre-trial hearing.  This offer is further supported by counsel's declaration that Judge Louie's only offer was for a 32-month term:

> I have no record or recollection of ever receiving a plea offer in Mr. Terry's case that included an agreed sentence of 16 months.  While the April 5, 2002, [pre-trial] hearing transcript contains a question from Judge Warren about when Judge Louie made an offer of 16 months, and to which I responded that it was made at the March 18th pretrial conference, when this matter was revisited at the April 10, 2002, . . . hearing, the offer was described correctly as one for 32 months.  I can only explain the April 5th reference to a 16-month offer as being either a typographical error in the transcript, or a misstatement by Judge Warren that went unnoticed at the time.  There never was an offer for 16 months.

Resp't Ex. 13 at 1-2.

Even if counsel's performance was deficient because he failed to convey a 16-

month offer to petitioner, habeas relief would be in order only if petitioner further showed that there is a reasonable probability that "'but for counsel's unprofessional errors, the result would have been different.'" Blaylock, 20 F.3d at 1466 (quoting Strickland, 466 U.S. at 694). Petitioner has not shown that there is a reasonable likelihood that he would have accepted the 16-month offer; rather, the record shows that petitioner was unwilling to accept any plea that involved prison time. See Resp't Ex. 3 at 16-17 (showing that petitioner was "emphatic" to counsel that "he wanted probation and a program" and did not want any prison time). Petitioner is not entitled to federal habeas relief on this claim of ineffective assistance of counsel.

c.    <u>Failure to Request Timely Evidence Code Section 402 Hearing and to Move to Suppress Petitioner's Inculpatory Statements Made While in the Custody of Officers Rhodes and Izaguirre</u>

Petitioner claims that trial counsel was ineffective in failing to request a timely Evidence Code section 402 hearing and to move to suppress petitioner's inculpatory statements made while in the custody of security officer Rhodes and police officer Izaguirre.

Petitioner acknowledges that trial counsel requested a section 402 hearing as to security officer Rhodes's testimony before trial and that the request was denied. Petr's Traverse at 1. He nonetheless argues that his counsel failed to request a timely section 402 hearing as to Rhodes's testimony at trial because the request came after Rhodes testified. A review of the record shows that, after Rhodes testified, trial counsel requested a section 402 hearing:

> I would just like to memorialize for the record my objection to the testimony of Romney Rhodes, specifically regarding a statement that Mr. Terry made to the police officer while he was in police custody. Something to the effect that, quote, "I did it, but I'm going to be released anyway," as a violation of my in-limine motion to have a 402 hearing on any in-custody statements made to the police.

13

1    We have not had those.

2    I know it came through another witness, rather quickly.  And so, for the
3    record, I would actually -- object.  I ask that it be stricken.  And I ask for a
     mistrial because of the fact that that was made outside of a 402 hearing
4    regarding this admission in evidence.

5    Resp't Ex. 4 at 68.

6

7    Whatever merit there is to petitioner's claim that his counsel's performance was

8    deficient, petitioner is unable to satisfy the second requirement of Strickland, i.e., that

9    he was prejudiced by counsel's deficient performance.  As discussed earlier, the trial

10   court eventually held a section 402 hearing and reasonably found that petitioner's

11   inculpatory statements were voluntary and spontaneous, and therefore admissible.

12   Petitioner cannot show that, had counsel timely moved for a hearing and suppression of

13   petitioner's inculpatory statements, it is reasonable that the trial court would have

14   granted the motion and suppressed the statements.  See Wilson v. Henry, 185 F.2d 986,

15   990 (9th Cir. 1999) (in order to show prejudice under Strickland from failure to make a

16   motion, petitioner must show that (1) had his counsel made the motion, it is reasonable

17   that the trial court would have granted it as meritorious; and (2) had the motion been

18   granted, it is reasonable that there would have been an outcome more favorable to him).

19   Petitioner is not entitled to federal habeas relief on this claim of ineffective assistance of

20   counsel.

21                              CONCLUSION

22   For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

23   The clerk shall enter judgment in favor of respondent and close the file.

24

25

26   SO ORDERED.

27

28                                    14

1

2   Dated:   02/17/06

3   THELTON E. HENDERSON
    United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                            15